## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| NANCY BOUCHARI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.   17-cv-5895 |
| | ) | |
| INTERACTIONS CONSUMER EXPERIENCE | ) | |
| MARKETING INC., and | ) | |
| CLUB DEMONSTRATION SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, NANCY BOUCHARI by and through her attorneys, Nicholas F. Esposito and Christopher K. Crimer, and for her Complaint against INTERACTIONS CONSUMER EXPERIENCE MARKETING, INC., and CLUB DEMONSTRATION SERVICES, INC. (collectively as "Defendants"), and allege the following:

### JURISDICTION, VENUE, AND PARTIES

1.     This action is brought pursuant to the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. §2601 *et seq*., Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 *et. seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e, *et seq.,* and 28 U.S.C. §§1331, 1343(a)(3) and (4).

2.     Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for damages, injunctive and other relief for illegal discrimination in employment.

3. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices occurred in this district and one or more parties reside in this district.

## THE PARTIES

4. Plaintiff, Nancy Bouchari ("Bouchari"), is a forty-four-year-old female and resident of Will County, Illinois.

5. Defendant Interactions Consumer Experience Marketing, Inc. (previously known as Daymon Interactions Inc.) is Delaware corporation registered to do business in Illinois and parent company of Club Demonstrations Services, Inc.

6. Defendant Club Demonstration Services, Inc. (hereinafter "CDS") owns an in-house event marketing company which offers services within Costco stores with locations throughout the country including in Illinois and this judicial district. Defendants collectively are engaged in an industry affecting commerce and, at all times pertinent hereto, was an employer within the meaning of 29 U.S.C. §2611, 42 U.S.C. § 12111, 29 U.S.C. §630(b) and 42 U.S.C. §2000e(b). On information and belief, Defendants employ more than one hundred (100) employees.

7. CDS is a Connecticut Corporation, with its principal place of business in San Diego, California, and is registered to do business in Illinois with an office located in Oak Brook Terrace, DuPage County, Illinois.

## PROCEDURAL REQUIREMENTS

8. On February 7, 2017, Bouchari filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Bouchari's Charge was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More

than sixty (60) days have expired since Bouchari filed her EEOC Charge. Bouchari has otherwise complied with all administrative prerequisites to filing this action.

9.      On or around May 22, 2017, Bouchari received her Notice of Right to Sue from the EEOC. (See Exhibit A attached hereto). Bouchari timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

## FACTUAL BACKGROUND

10.      Bouchari was hired by CDS on September 10, 2010 to be the area manager. Her duties included overseeing operations for CDS at nine Costco locations in the Chicagoland and Indiana territory. In that role, Bouchari managed the budget, payroll, scheduling, human resource recruiting, sampling, and special events. In 2012, her job title was renamed CDS "District Manager".

11.      From 2010 to 2015, Bouchari had much success and received praise for her work. In that five-year span, she received only 4 out of 5 or 5 out of 5 performance ratings. She consistently received merit increases and performance bonuses. By 2014, Bouchari was given a territory.  It included thirteen (13) stores Niles, Illinois to Peoria, Illinois, and portions of Iowa and Indiana.

12.      In 2015, Bouchari constantly on the road traveling for many days in a month. At the same time, she participated in numerous daily business conference calls.

13.      By the end of 2015, due to the constant traveling and being on her feet all day, Bouchari began feeling ill. Her doctor and was diagnosed with a gynecological condition that was being aggravated by the stresses on her body of being on her feet all day and the amount of traveling she was doing for her job.

14.      Due to Bouchari's debilitating condition, Bouchari's doctor instructed her to take a

six-week work leave to stay off her feet and to recover.

15.     On or about February 4, 2016, Bouchari communicated her doctor's instruction to her human resources manager at CDS, Robert Arend ("Arend"). Arend put Bouchari on FMLA medical leave, which she did the next day.

16.      Shortly after Bouchari's approval by Arend to go on FMLA leave, Bouchari was sent an email by her direct supervisor, Scott Wilkens ("Wilkens"). In violation of HIPPA, he demanded to know the specific details of Bouchari's medical condition and the results of her medical tests.

17.     Bouchari responded Wilkens by email that she felt uncomfortable sharing that specific information with him since her disability was of a gynecological nature. Bouchari included Arend on that email. Shortly thereafter, Arend contacted Bouchari and apologized on behalf of Wilkens. He never directly did.

18.     At the time Bouchari first went on medical leave she had not been informed of any performance deficiencies, nor any duties needing improvement.

19.     After the initial six weeks of FMLA leave, Bouchari's doctor recommended that Bouchari take an additional six weeks of FMLA leave. Arend approved the additional six weeks of FMLA leave were approved by Arend.

20.     Bouchari was due to return to work on or about May 16, 2016. Bouchari's supervisor Wilkens scheduled a meeting in the morning on the day that Bouchari was to return.

21.     On the day that Bouchari returned to work, she met with Wilkens at which meeting he immediately put her on a performance improvement plan. ("PIP") without explanation, identification of performance deficiencies or any duties needing improvement.

22.     The PIP was retaliation against Bouchari for requesting FMLA leave to recover

from her disability.

23.     When Bouchari returned from medical leave, her co-workers advised her that while she was on FMLA leave, Wilkens had approached them to "dig up dirt" on Bouchari.

24.     Beginning after Bouchari returned from disability/FMLA leave, Bouchari was told that she now had to participate in an additional weekly conference call with Wilkens, in addition to the regular weekly conference call attended by all the other district managers.

25.     During Bouchari's separate and individual weekly conference calls, Wilkens became aggressive in his tone and questioning, and would not let Bouchari finish answering questions without cutting her off.

26.     Due to the Wilkens' retaliation that Bouchari was experiencing, Bouchari in an email asked Arend, Debra Bates (Director of Operations for CDS), and the Director of Human Resources for CDS, Robert Davies, for an investigation into her claim of retaliation.

27.     Bouchari followed up that email with a phone call to Arend a few days later.

28.     Within one week of that call and on June 22, 2016, Bouchari was called by Arend, Wilkens and Debra Bates, and told that she was fired.  No explanation was given for her firing.

29.     Bouchari was replaced by a younger male employee.

## COUNT I
### (RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. §§2601)

30.     Bouchari restates and realleges paragraphs one through twenty-nine (1-29) as if fully stated herein as paragraph thirty (30).

31.     Defendants were at all applicable times qualified employers as defined under the Family and Medical Leave Act, and at all relevant times employed in excess of fifty (50) employees within a 75-mile radius of Plaintiff's place of employment. Plaintiff was at all times

relevant, an FMLA eligible employee of Defendants.

32.     Defendants retaliated against Plaintiff for exercising her rights under the FMLA, in violation of the FMLA for terminating Plaintiff's employment.

33.     Defendants, individually, and/or by and through their agents, engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of the FMLA and any alleged reasons to the contrary are pretextual.

34.     Defendants' wrongful acts, individually and/or by and through its agents, were deliberate, intentional, willful, wanton and malicious and in total disregard for Plaintiff's rights under the FMLA of 1993.

35.     As a direct and proximate result of the acts engaged by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of pay and benefits, past and future career opportunities, loss of future earnings and other incidentals and benefits of employment; attorney's fees, costs and other damages allowed under the FMLA.

WHEREFORE, Plaintiff, NANCY BOUCHARI, respectfully requests that this Court enter judgment in her favor and against Defendants INTERACTIONS CONSUMER EXPERIENCE MARKETING, INC. and CLUB DEMONSTRATION SERVICES, INC. in an amount that will fully compensate her for her injuries and damages for Defendants' violations of Plaintiff's rights under the FMLA and award Plaintiff damages for loss of wages, loss of future earnings, loss of career opportunities, loss of employee benefits, court costs, expense of litigation, punitive damages, compensatory damages, expert witness fees, reasonable attorney's fees, liquidated damages, prejudgment interest, and any other damages allowed under the Family and Medical Leave Act, as well as any other further relief the Court deems just and appropriate.

## COUNT II
### (RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.*)

36.     Bouchari restates and realleges paragraphs one through thirty-five (1-35) as if fully stated herein as paragraph thirty-six (36).

37.     Bouchari was disabled within the meaning of the ADA.

38.     Bouchari was qualified to perform the essential functions of her job with reasonable accommodation.

39.     Bouchari engaged in statutorily protected activity by requesting reasonable accommodations, including but not limited to, medical leave.

40.     Defendant retaliated against Bouchari when it: 1) launched an unwarranted investigation against Bouchari while she was on medical leave; 2) singled Bouchari out and forced her to participate in separate conference calls with her supervisor; 3) subjected Bouchari to harassment and humiliation, thereby creating a hostile work environment; and 4) terminated Bouchari.

41.     There is a causal connection between the statutorily protected activity and Defendant's action.

42.     As a direct and proximate result of Defendant's retaliation against Bouchari, she has suffered and will continue to suffer damages including, pain and suffering, and extreme and severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation; and injunctive relief to reverse and to prevent noncompliance with its duties under law.  Bouchari is thereby entitled to general and compensatory damages in amounts to be proven at trial.

43.     Bouchari seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

44.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant maximum statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Plaintiff, NANCY BOUCHARI, prays for judgment in her favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

## COUNT III
## (RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. §621 *et. seq.*)

45.     Bouchari restates and realleges paragraphs one through forty-four (1-44) as if fully stated herein as paragraph forty-six (46).

46.     After returning from medical leave, Bouchari attended CDS's annual conference in Washington. While attending that conference, Wilkens, in the presence of Bouchari and others stated that "it was time to clean house." This was code for terminating older individuals. Bouchari had seen a pattern of women over the age of forty being terminated at CDS over the past two years.

47.     Bouchari engaged in statutorily protected activity by making informal and formal complaints to Defendant regarding discrimination and harassment she had been subjected to by her superiors throughout her employment.

48.     Defendant retaliated Bouchari for engaging in the statutorily protected activity by terminating Bouchari's employment. Bouchari was replaced by a male District Manager in his thirties.

49.     There is a causal connection between the statutorily protected activity and Defendant's action.

50.     As a direct and proximate result of Defendant's discrimination against Bouchari, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Bouchari is thereby entitled to general and compensatory damages in amounts to be proven at trial.

51.     Bouchari seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, NANCY BOUCHARI, prays for judgment in his favor and against Defendants and that the court award her direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

## <u>COUNT IV</u>
### (RETALIATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq*.)

52.     Bouchari restates and realleges paragraphs one through fifty-one (1-51) as if fully stated herein as paragraph fifty-two (52).

53.     During Bouchari's employment with CDS, and after she returned from medical leave she engaged in statutorily protected expression in complaining about discrimination to her

human resources department.

54. As a result of engaging in such statutorily protected expression, Bouchari was subjected to adverse employment actions, including employment termination.

55. After Bouchari's termination, Bouchari was replaced by a male employee.

56. Defendants engaged in discriminatory retaliation against Plaintiff for exercising her statutory rights in complaining about discriminatory behavior by her supervisor, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

57. There is a causal link between Plaintiff's statutorily protected expression and the adverse employment action.

58. As a direct and proximate result of CDS's retaliatory discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

59. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant maximum statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

60. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants and asks that the Court award her direct and consequential damages, lost wages and benefits, including back

pay and front pay, other liquidated damages, maximum statutory punitive damages pursuant to 42

U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such

other relief as the Court may deem proper and appropriate.

Respectfully submitted,
**NANCY BOUCHARI**,
Plaintiff,
By: /s/ Nicholas F. Esposito
One of her attorneys

Nicholas F. Esposito, Atty. # 0755176
Christopher K. Crimer, Atty. # 6319104
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, IL 60527
(312) 346-2766